JjWILLIAM H. BYRNES, III, Chief Judge.
The State’s writ application is granted to review the trial court’s ruling that granted the defendant Hilton Lee’s motion to suppress the identification. We vacate our stay order, reverse and remand.

Procedural History

On October 2, 2001, the defendants Lee Hilton and Kwame Wilson were each charged with two counts of armed robbery, charges to which they subsequently pleaded not guilty. The trial court held hearings on their motions to suppress the confession and identifications on January 18, April 19, and July 26, 2002. On September 5, 2002, the court denied the motions as to counts one and two but granted the motion to suppress the identification as to count three. With respect to count three (3) involving the photographic identification of Hilton Lee by the victim, Douglas Hoffman, the State’s writ application followed. On October 29, 2002 this Court issued a stay order. The defense filed a response, and the State supplemented its writ application with the September 5, 2002 transcript on the motion to suppress.

19Facts

The testimony concerning the identification in count three (3) was taken at the July 26, 2002 hearing, where Douglas Huffman testified he was robbed soon after midnight on July 29, 2001. Mr. Huffman stated that he worked as a cook at Arnaud’s Restaurant, and he was walking home from work at the time he was robbed. He testified that he stopped for one drink at a bar, and when he got to the corner of Bourbon and Kerlerec Streets, he heard a noise coming from behind him. He said that he turned and saw a man riding a bicycle toward him. The man wore a bandanna around the bottom half of his face, and he pulled a gun, demanding that Mr. Huffman give him all his money. Mr. Huffman stated that the area was somewhat lit, and he was able to observe the man for approximately thirty seconds. He said the man asked for more money, and when Mr. Huffman replied that he had no more money, the man asked about some people who were walking on the other side of the street and then he left.
Mr. Huffman testified that he went into a nearby bar, and the bartender called the police. Mr. Huffman spoke with officers at the scene, and he indicated he described the robber as being approximately 5'8" tall; he also stated he was 5'7" tall. He stated that he did not mention any distinguishing marks on the robber. On August 9, 2001, he viewed a photographic lineup from which he chose the picture of the defendant Hilton Lee as the man who robbed him. He testified that because he had seen only the top half of the robber’s face, the officer who showed him the lineup gave him a piece of paper to hold over the bottom part of the photographs. He positively identified Lee in court as the man who robbed him.
Detective Daniel McMullen testified that he investigated the robbery of Mr. Huffman. He stated that Hilton Lee became a suspect in this case due to his ^participation in other robberies in the Fifth and Eighth Districts. Detective McMullen stated that he compiled a photographic lineup, which included Lee’s picture, and on August 9, 2001, he contacted Mr. Huffman and had him come to the police station to view the lineup. Detective McMullen related that he showed Mr. Huffman the lineup, and Mr. Huffman chose Lee’s photograph. Detective McMullen denied suggesting to Mr. Huffman which photograph to choose, nor did he force or threaten Mr. Huffman to make him choose Lee’s picture. Detective McMullen testified that the description of the robber given by Mr. Huffman was of a *3 man 5'8" and weighing 150-155 pounds, and there was no mention of any tattoos. Detective McMullen stated that Lee was 5'4" and weighed 130 pounds.[1]
The July 26, 2002 transcript containing the testimony shows that the trial court suppressed the identification on the basis that the victim stated that the perpetrator was a little taller than he was, but the defendant is actually three inches shorter than the victim. Mr. Hoffman did not say that Hilton Lee had any distinguishing marks although he has tattoos on his arms.
The trial court did not find the actual photographic lineup was suggestive. The trial court stated at the July 26, 2002 hearing that:
I don’t see, though, suggestion. I don’t see the suggestion here, in terms of the police officer’s presentation and this in some way being a suggestive lineup. I’m not quite sure that the witness Huffman’s testimony as to ID is reliable.
In State v. Thibodeaux, 98-1673 pp. 20-21 (La.9/8/99), 750 So.2d 916, 932, certiorari denied sub nom. Thibodeaux v. Louisiana, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000), the Louisiana Supreme Court discussed the test for determining the admissibility of an out-of-court identification:
14As a general matter, the defendant has the burden of proof on a motion to suppress an out-of-court identification. La.Code Grim. Proc. art. 703(D). To suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). However, even when suggestiveness of the identification process is proven by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 738.
The Supreme Court held in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), that despite the existence of a suggestive pretrial identification, an identification may be permissible if there does not exist a “very substantial likelihood of irreparable misidentification.” Under Manson, the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include: 1) the witness’ opportunity to view the criminal at the time of the crime; 2) the witness’ degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Id. [emphasis added]
See also State v. Simmons, 99-1154, (La.App. 4 Cir. 12/6/00), 779 So.2d 856, writ denied sub nom. State ex rel. Simmons v. State, 2001-0767 (La.11/9/01), 801 So.2d 364, where this court emphasized that a defendant must first establish that an identification procedure was suggestive before an identification can be suppressed.
In the present case, as noted by the State, the trial court found the procedure used at the photographic lineup was not suggestive. There was no basis for the *4 trial court to suppress the photographic identification. Although the victim Mr. Hoffman described the robber as being an inch taller than Mr. Hoffman was, the defendant Hilton Lee is actually three inches shorter than the victim, and Hilton |sLee had tattoos on his arms. However, pursuant to Thibodeaux and Simmons, the difference in height, weight, and the existence of tattoos would not be the basis for suppressing the photographic lineup.
Instead, this would be a basis for the defense at trial to impeach the victim’s credibility as to any in-court identification of the defendant as the man who robbed him. The purpose of a suppression hearing is to determine if the procedures used in the identification was suggestive; it is not to determine if the defendant is guilty of the charged crime. The fact that Lee is shorter than the victim and had tattoos can be used at trial to impeach the victim’s testimony at that time; it has no bearing on the issue of the admissibility of the photographic lineup from which the victim chose the defendant’s picture. The credibility of a witness’ identification is a question for the jury to decide. State v. Williams, 769 So.2d 629, 637 (La.App. 4 Cir.2000).
Accordingly, this Court’s stay order is vacated, the trial court’s ruling is reversed, and the defendant Hilton Lee’s motion to suppress is denied.

WRIT GRANTED: STAY ORDER VACATED; REVERSED & REMANDED.

. The third person to testify at this hearing was a witness to a different robbery; his testimony is irrelevant to this writ,